UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:22CV-P165-JHM

**TERRY LEWIS CLINE**                                                                                          **PLAINTIFF**

**v.**

**MIKE ALLEN** *et al.*                                                                                          **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff Terry Lewis Cline filed the instant *pro se* 42 U.S.C. § 1983 action. The complaint is now before the Court for initial screening pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will dismiss the action.

### I. SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff is an inmate at the Simpson County Jail. He sues Mike Allen, who he identifies as the Chief of Police of the Beaver Dam, Kentucky Police Department, in his individual and official capacities, as well as the City of Beaver Dam.

The statement of claim consists of thirteen handwritten pages. Plaintiff states that on June 6, 2022, his wife Patricia Jo Cline filed an emergency protective order against him "to cover up the affair she was having with Mike Allen, who is the Chief of Police in Beaver Dam, Ky." He asserts that he had to leave his home "because of the EPO and live in a camper in Beaver Dam, Ky Downtown." He further states as follows:

> I notice cars with tinted windows on July, 11 2022 at 9:am sitting across the street where I was staying the cars were there all day, some would leave and another would replaced them. I walk across the street at 5:00 pm and ask why they were watching me, the reply I got back was they didn't know what I was talking about. I turn around and left and got in my car to go to the store as I left they started following me, when I pulled into the store at Caseys on 231 in Beaver Dam, they would sit and wait til I came out. When I left they would follow me back to my place where I was living. They would be there until the next morning. On July the 12th at 8:30 am I walk across the street from my camper and I had pen and paper

> so when I started to write down plate numbers they would take off. But different cars and trucks would return. Every time I leave my home to go to work or to stores I was followed by trucks all which had tinted windows to cover their face or identity. From July 11th to July 23rd I was follow by different cars and trucks no matter where I went in all parts of the County of Ohio Ky. Once going to my friends who live in Centertown, Ky a part of Ohio County, Ky on July 23rd at 9:00pm while driving West on 69 going to Centertown a car appear behind me pulling up on my bumper, then hitting his or her bright light blinding me to where I was force off the road almost going over a deep embankment close to hitting a telephone pole, I was pretty shaken up.

Plaintiff states that he went to the Ohio County Sheriff's Office to report the incident "only to be told by a deputy there was nothing they could do, unless I got the plate number." According to the complaint, Plaintiff sent pictures of the cars and trucks to the Ohio County Attorney and tried to contact him but did not receive a response.

Plaintiff further states as follows:

> Again on July the 30th I was leaving church in Centertown, Ky going toward Hartford, Ky on 69 around about 11:30 am I approch some bad curves on 69 a gold buick driven by my wife Patricia Jo Cline severd over in my lane causing me to go in the other lane almost hitting guardrails, then back into my lane almost hitting guardrails again I finally got my car under control once again, I was shaken up. This is where I was fearing for my life. I went to the Ohio County Sheriff Office to report the incident, I fill out a incident report explaining what happen. The report was turn over to a deputy to turn in the County Attorney Office. Nothing was done. For some reason I never could get the deputys name.

Plaintiff describes another incident on August 6th at 7:30 am where he was followed from his residence by two men in a black Chevy pickup truck. He states that while he was driving, his motorcycle made a large boom, and he almost wrecked. He asserts that he called the Beaver Dam Police and that "once a officer arrived I explained about the truck with the two male guys. The officer look at me and told me I didn't make sense I was very upset and he left once again I couldn't get his name I would know him if I see him. This is when I started worrying about my life."

Plaintiff next asserts as follows:

Again on August 6th at about 5:30 pm Mr. Cline seen his wife Patricia Jo Cline and Chief Mike Allen sitting across the street on Main St "231" from his place of resident watching him, Mr. Cline started walking toward the gold Buick they were sitting in, as he got closer to the car Chief Mike Allen pulled out with his hand up trying to cover his identity. On this same day Mr. Cline left his resident and travel to Bowling Green, Ky his hometown at about 6:30 pm. On his way there he was follow by multiple cars and trucks with Ohio County and Butler County plates. Butler County is suppose to be where Chief Mike Allen is living and was once a deputy sheriff, along the way other join by coming off ramps in Cormwell, Ky on to 165 . . . the cars and trucks had tinted windows to cover thier inidenty they were dark tinted, as Mr. Cline was travel some of the cars and truck would pull up in front of him slowing him down for some odd reason.

Plaintiff states that he stopped at a gas station in Bowling Green and "noticed some cars he had seen many times" in the parking lot. When he came out of the gas station, "other cars and trucks had joint the other." He states that he approached some of the cars and "ask the person who were driving, why were they following him, again they said they didn't know what he was talking about." He told one of the drivers "to stick around while he called the Bowling Green Police" and "they all pulled out at a high rate of speed." Plaintiff reports that he visited several family members and was followed by cars and trucks who "were coming by to see what he was doing this upset Mr. Cline so he try to stop a few of them only to see them to speed off so he couldn't get any plate numbers." He states that after he was followed to his aunt's house he was upset and "told his family what was going on, and was told to be careful they were worried about his safety because of past incendts."

Plaintiff states that he traveled back to Beaver Dam "with the vehicles following." He continues, "As always while home he was watch 24-7 all week long they follow him to work every now and then pulling in the road where his job site was sitting there for a while these vehicles driving up and down Hwy 69 until he got off work. Everywhere he went Mr. Cline was followed."

3

Plaintiff states that on August 19, 2022, he spoke with Adam Wright, who was a "former Kentucky State Police Det. and newly Sheriff Elect of Ohio County, Ky." He states that he "told the new Sheriff Elect what was going on with Chief Mike Allen and his wife, Officer Wright stated he didn't know that was my wife the Chief was with. A married woman still to this day." Plaintiff continues:

> Adam Wright told Mr. Cline that he would look into it. Mr. Cline explain to him about the attmps on his life, and vehicles following him and changing out license plates and putting on temporary tags so Mr. Cline couldn't get their plate numbers, vehicles sitting outside his resident watching for every move he was making 24-7. Again why? Was the purpose of all this, Chief Mike Allen was behind all this.

Plaintiff asserts that he talked with Wright several times but that he "has never heard again from Wright." He states that on August 18, 2022, Wright was sitting "in a unmark police car watching Mr. Cline for what reason Mr. Cline doesn't know. Sheriff Elect Adam Wright knows more than what he has told Mr. Cline. Now does Mr. Cline fear for his life once he is release from prison, because of him filing a lawsuit." He asserts, "Mr. Cline just wants to know why all this was going on against him, he wasn't out committing crimes, working to get by because the Chief was having affair with Mr. Cline wife. Why the attemps to run him off the road or having people sitting on him, watching every move he made." He also states that he thinks Allen "help his wife come by his place of resident, and take his 97 Dodge work truck and $4,000 dollars with of his work tools, causing him to be out of work for weeks."

Plaintiff asserts that he once asked Allen "if he was having affair with his wife the Chief replied No! Mr. Cline knew he was not telling the truth so he didn't push the issue." He also states, "Mr. Cline never use physical abuse against his wife. In fact Mr. Cline was the one who was physical abuse." He asserts as follows:

> Mr. Cline was upset about the affair, but he never harm either one of them. . . . Mr. Cline was emotion and mental distress, his privacy was invaded by Chief Allen,

4

when he was visiting with his family, even at his mothers grave, at his decease brother home. Chief Allen was behind this. Mr. Cline saw Chief Allen and his wife more than once, he couldn't get jobs in Ohio County.

Plaintiff maintains that he "doesn't even know what civil rights law are in violation. He just knows he was wrongful done by Chief Allen and Sheriff Elect Adam Wrights know more about this and was told by Mr. Wright he would look into this matter and never contact Mr. Cline again." He states that he is "asking the Courts to help him find answers, and help him with damages in this motion. Its not about revenge." He alleges that Allen "took it up on his own to break laws of Kentucky by abusing the power of his own Police Department, involving his own officers and citizen of Ohio County and Butler County, involving the safety of them and Mr. Cline." He states that he "would like to see criminal charges brought against Chief Mike Allen and Patricia Jo Cline the two plan all this together to cover up their affair from Mr. Cline."

As relief, Plaintiff seeks compensatory damages.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the

5

plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The term "frivolous, when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Id.* (internal quotations omitted). While federal courts should not dismiss an action if the facts alleged are merely unlikely, the court can properly dismiss such an action if the allegations in the complaint are found to be "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (citing *Neitzke*, 490 U.S. at 327). Allegations are clearly baseless if they are "fanciful," "fantastic," "delusional," or if they "rise to the level of the irrational or the wholly incredible." *Id.* at 32-33.

Upon review of the complaint, the Court finds that the allegations do not "provide the factual context that would render them plausible and thus entitle them to a presumption of truth at this stage in the litigation." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 374 (6th Cir. 2011) (citations omitted). Determining the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). Plaintiff's allegations clearly reflect his belief that he was being followed by numerous unknown individuals at the direction of Allen. However, Plaintiff does not provide enough concrete factual allegations to support his claims that he was being constantly followed by multiple vehicles day and night or how or why Allen would be able to enlist multiple people to follow Plaintiff everywhere he went. Therefore, the Court finds the allegations to be

baseless. *See Holder v. AT&T Servs.*, No. 3:20-cv-00310, 2020 U.S. Dist. LEXIS 200744, at *18 (M.D. Tenn. Oct. 28, 2020) (finding that "[p]laintiff's allegations that AT&T orchestrated a prolonged surveillance campaign against her . . . are 'conclusory and bare,' so they are not entitled 'to the presumption of truth'"); *Curtis v. FBI*, No. 4:18-cv-237-JCH, 2018 U.S. Dist. LEXIS 89493, at *7 (E.D. Mo. May 30, 2018) (finding plaintiff's claim that he is "being constantly monitored by the FBI [and] stalked and harassed by federal agents" to be delusional and baseless); *Marshall v. Staffieri*, No. 3:09-CV-448-S, 2009 U.S. Dist. LEXIS 69958, at *5-6 (W.D. Ky. Aug. 11, 2009) (citations omitted) (finding that "[p]laintiff's complaint is nothing more than a collection of totally unsubstantiated events compiled by an individual who believes that various things are occurring to her, which simply are illogical and delusional"). Accordingly, the complaint will be dismissed for failure to state a claim upon which relief may be granted and as frivolous.

Furthermore, to the extent Plaintiff requests the Court to investigate Allen or seeks to file criminal charges against him, a district court has no authority to order a criminal investigation or prosecution, nor can it do so itself. *Kuilan v. Zimmerman*, No. 22-5331, 2022 U.S. App. LEXIS 29631, at *2 (6th Cir. Oct. 24, 2022); *see also United States v. Trevino*, 7 F.4th 414, 421 (6th Cir. 2021) ("'[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'") (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)). Accordingly, Plaintiff's claims based on his request for a criminal investigation or prosecution must also be dismissed for failure to state a claim upon which relief may be granted.

The Court will enter a separate Order of dismissal for the reasons stated herein.

Date: April 24, 2023

*Joseph H. McGinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
     Defendants
4414.010

7